**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| MARTIN FULLER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 11-81184-CIV-MARRA |
| Plaintiffs, | ) ) ) | Hon. Kenneth A. Marra |
| v. | ) ) | |
| IMPERIAL HOLDINGS et al., | ) ) | |
| Defendants. | ) ) | |

**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED
SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................................1

II.    OVERVIEW OF THE LITIGATION AND SETTLEMENT ...........................................2

III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO
       GRANT FINAL APPROVAL .........................................................................................4

       A.     The Standards for Judicial Approval of Class Action Settlements.........................4

       B.     The Settlement Meets the Eleventh Circuit Standard for Approval ......................5

              1.     There Is No Fraud or Collusion Behind the Settlement ............................5

              2.     Highly Complex and Uncertain Litigation Will Be Averted by the
                     Settlement ................................................................................................6

              3.     The Factual Record Is Well Developed to Enable Class Representatives
                     and Lead Counsel to Make a Reasoned Judgment About the Settlement ...8

              4.     Lead Plaintiffs Face Obstacles to Obtaining the Relief They Seek ...........9

              5.     The Benefits Provided by the Settlement Are Fair, Adequate and
                     Reasonable When Compared with the Range of Possible Recovery ........10

              6.     The Opinions of Lead Counsel, Lead Plaintiffs, and
                     Class Members Favor Approval of the Settlement .................................11

IV.    CERTIFICATION OF THE CLASS IS PROPER...........................................................12

       A.     The Class Is Sufficiently Numerous ..................................................................13

       B.     The Commonality and Typicality Elements Are Satisfied...................................13

       C.     The Adequacy Requirement Is Satisfied............................................................14

       D.     Predominance of Common Issues and Superiority of the
              Class Action Mechanism..................................................................................15

V.     THE PLAN OF ALLOCATION SHOULD BE APPROVED .......................................16

VI.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS.........17

VII.   CONCLUSION ...........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Access Now, Inc. v. Claire's Stores, Inc.*,
    No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ....................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................................12

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ....................................................................................................10

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534(S.D. Fla. 1988), ..................................................................................11

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984)............................................................................ 4, 5, 6, 11

*Canupp v. Sheldon*,
    No. 2:04-cv-260, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) ....................................5

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003) ..................................................................................13

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)......................................................................................16

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977)..................................................................................4, 5, 7

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ....................................................................................................17

*Garst v. Franklin Life Ins. Co.*,
    No. 97-0074, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. 1999) ....................................12

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................................13

*Holman v. Student Loan Xpress, Inc.*,
    No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009)....................6

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012)........................................................................................9

*In re BellSouth Corp.*,
    No. 1:02-CV-2142-WSD, 2006 WL 870362 (N.D. Ga. April 3, 2006) ..........................15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d. Cir. 2001)........................................................................................11

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ................................................................................11

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...........................................................................................8

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................16

*In re Gulf Oil/Cities Service Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................................7

*In re HealthSouth Corp. Sec. Litig.*,
    572 F.3d 854 (11th Cir. 2009)......................................................................................5

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ..................................................................................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................16

*In re Michael Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................................9

*In re Miller Indus. Sec. Litig.*,
    186 F.R.D. 680 (N.D. Ga. 1999) ...............................................................................13

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977).....................................................................................18

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................................10

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994)............................16

*In re Scientific Atlanta, Inc. Sec. Litig.*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010)........................................................................9

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ..................................................................................7

*In re SmithKline Beckman Corp. Sec. Litig.*,
    751 F. Supp. 525 (E.D. Pa. 1990).................................................................................7

*In re Theragenics Corp. Sec. Litig.*,
    205 F.R.D. 687 (N.D. Ga. 2002) ...................................................................12, 13, 15

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992)............................................................................4, 5, 8

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 0165(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).........................17

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd* 798 F.2d 35 (2d Cir. 1986)..............................................................................9

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ...............................................................................6

*Kerr v. City of W. Palm Beach*,
  875 F.2d 1546 (11th Cir. 1989)................................................................................15

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987)..................................................................................14

*Knight v. Alabama*,
  469 F. Supp. 2d 1016(N.D. Ala. 2006),......................................................................4

*Leverso v. SouthTrust Bank of Ala.*,
  18 F.3d 1527 (11th Cir. 1994)....................................................................................5

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)..................................................................................11

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ......................................................................4

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988)...............................................................4, 8, 11

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974)...................................................................................8

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
  487 F.3d 261 (5th Cir. 2007),....................................................................................10

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................................6

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ................................................................................17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................ 15-16

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ........................................................................8, 12

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ...........................................................................4, 5, 7

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003)..................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................................................10

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988) ..........................................................................11

*Woodward v. Nor-Am Chem Co.*,
    No. Civ. 94-0780-CB-C, 1996 WL 1063670 (S.D. Ala. May 23, 1996)...........................6

## RULES AND STATUTES

Federal Rules of Civil Procedure
    23(a) ................................................................................... 12, 13, 15, 16
    23(a)(3) ...........................................................................................13
    23(a)(4) ...........................................................................................14
    23(b)(3) ............................................................................. 12, 13, 15, 16
    23(e) .......................................................................................1, 4, 5, 17
    23(f) ................................................................................................10
    23(g) ...............................................................................................16
    23(g)(1)(A) .......................................................................................16
    23(g)(1)(B) .......................................................................................16

## OTHER AUTHORITIES

1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25...............................................14

4 Newberg on Class Actions § 11:51 (4th ed. 2010) .....................................................6

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs Richard Sauer, Francis Sauer, Stephen Sauer, and Tamara Sauer (the "Sauers" or "Lead Plaintiffs") respectfully move the Court for entry of the proposed Order and Final Judgment: (i) granting final approval of the Settlement and Plan of Allocation; (ii) finally certifying the Class for purposes of the Settlement; and (iii) finding that notice to the Class satisfied due process.

**MEMORANDUM OF LAW**

## I.      PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully submit this memorandum in support of final approval of the settlement of this class action.   The terms agreed upon by the parties are set forth in the Stipulation of Settlement, which was preliminarily approved by this Court by Order dated August 4, 2013 (the "Settlement").[1]

As set forth herein, and in the Declaration of Lionel Z. Glancy, filed herewith ("Glancy Decl."), the Settlement was reached after an extensive investigation conducted by Lead Counsel; the drafting of the initial complaint; researching and preparing a comprehensive amended complaint that Lead Counsel were prepared to finalize and file with the Court if so required; substantial discovery, including voluminous document review and the interviewing of two of Imperial's officers and directors; the drafting of a comprehensive mediation statement; and arm's-length settlement negotiations conducted over two mediations with the aid of a renowned mediator.

The merits of the Settlement are demonstrated by, *inter alia*: the significant recovery – approximately consisting of $12 million in cash and two million Imperial warrants[2] for a total value of $15.5 million to $17.6 million – approximately 21.8% to 24.7% of Lead Plaintiffs' maximum estimated damages of $71,071,627; the significant risk of continuing litigation; and the time and expense required to prosecute the case to a final judgment and through any ensuing

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation and Agreement of Settlement dated July 29, 2013. (Docket Entry ("D.E.") No. 88, Ex. 1, filed August 2, 2013) (the "Stipulation").

[2] The warrants have an exercise price of $10.75.  The warrants are valid for a period of five years from the date of issuance.  In Imperial's most recent Quarterly Report filed with the SEC on Form 10-Q, the Company valued these warrants at September 30, 2013, at a value of $5.6 million.  As of the date of filing, the warrants of Imperial stock contained in the Settlement were valued at $3.5 million by Lead Counsel's financial consultant using the Black-Scholes-Merton model.  Since there is no way to determine how much these warrants could be sold for at this time, as there is not a liquid marketplace for these warrants, for the sake of accuracy Lead Plaintiffs will treat the value of these warrants as being in the range of $3.5 million to $5.6 million.  Therefore, the Settlement value range is $15.5 million to $17.6 million.

appeals.  The Settlement is especially fair, reasonable, and adequate considering the diminished financial condition of the Company.

For the reasons set forth herein, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation, finally certify the Settlement Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice for this action as filed on August 2, 2013.  D.E. No. 88, Ex. 1-B.[3]

## II.    OVERVIEW OF THE LITIGATION AND SETTLEMENT

This matter relates to Imperial Holdings, Inc. ("Imperial" or the "Company"), a premium finance company.  Lead Plaintiffs sought an unspecified amount of damages and asserted claims under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") related to Imperial's failure to disclose in the Prospectus and Registration Statement (the "Registration Statement") that Imperial, in certain instances, made or facilitated the making of misrepresentations on applications for life insurance.  Specifically, Lead Plaintiffs alleged, *inter alia*, that the more than $174 million offering was made pursuant to a defective Registration Statement since the Company had failed to disclose that Imperial had been involved in improper premium financing of insurance policies, which exposed Imperial and certain of its employees, including its chief executive officer and its chief operating officer, to significant liability.  This liability, in fact, manifested itself in an investigation and raid by the FBI in conjunction with the United States Attorney's Office for the District of New Hampshire and the Company's payment of an $8 million penalty to the federal government.

In connection with investigating and developing this highly-technical case, Lead Counsel consulted accounting, financial and damages experts.  Indeed, the Settlement was ultimately reached only after Lead Counsel and Lead Plaintiffs' additional counsel[4] conducted an extensive investigation of the claims asserted, interviewed witnesses, reviewed a myriad of legal pleadings

---

[3] A copy of the Final Judgment and Order of Dismissal with Prejudice is also being filed concurrently herewith as the proposed order.

[4] Lead Plaintiffs' additional counsel refers to Robbins Geller Rudman & Dowd LLP and Grant & Eisenhofer P.A., the counsel for the plaintiffs in the two related securities actions that were originally filed in state court and removed to this Court by Defendants.  During the course of this Litigation and at the time of Settlement, these two actions had remand motions pending. As part of the Settlement, these motions will be withdrawn in the event that the Settlement becomes final.

2

in lawsuits seeking to invalidate insurance policies in which Imperial had a financial interest, researched and prepared a comprehensive amended complaint that Lead Counsel were prepared to finalize and file with the Court if so required, drafted an extensive mediation statement, and conducted discovery, including the strategic review of over two million pages of documents, the review of substantial documents produced pursuant by the Florida Office of Insurance Regulation pursuant to requests and interviews with high-level Imperial executives and directors.

During the two years of this Litigation, the parties have attempted to resolve this case through mediation. On June 18-19, 2012, the Parties conducted a mediation with the assistance of the Honorable Daniel Weinstein (Ret.). While the first mediation was unsuccessful, the parties continued in their attempt to resolve this contentious Litigation. On September 7, 2012, at a second mediation, the parties were able to agree to the material terms of a settlement of the Litigation. This was followed by extensive negotiation over the term sheet governing the resolution of this action and a related derivative action. This process was complicated by numerous factors: Defendants were represented by numerous separate counsel; the Company was in a precarious financial situation; there were two competing sets of counsel involved in the derivative action; and Imperial had policies with two different insurance companies. Following the agreement of the term sheet, the Parties then engaged in numerous discussions and exchanges of drafts of the Stipulation and its exhibits. Ultimately, the parties came to an agreement on all terms of the Settlement, which was memorialized in the executed Stipulation submitted to the Court on August 2, 2013.

As Lead Counsel expended significant effort and attained a thorough understanding of the strengths and weaknesses of the Class's claims, and as the Settlement is the product of arm's-length negotiation by experienced counsel with the assistance of a respected mediator, Lead Counsel is confident that the Settlement's terms are fair and reasonable, and provide the Class with an excellent recovery.

Additionally, the reaction to the Settlement has been favorable. Nearly 10,000 Claim Packets have been sent to potential Settlement Class Members containing the Court approved Notice and Proof of Claim form, which explain the terms of the proposed Settlement. Glancy Decl., ¶34 & Ex. 1 at ¶7.[5] To date, there have been no objections to the Settlement, the Plan of

---

[5] The Declaration of Jennifer M. Keough Regarding Notice Dissemination and Publication ("Keough Decl.") was previously submitted to the Court as D.E. No. 90.

Allocation, or Lead Counsel's application for attorneys' fees and expenses.  Keough Decl., ¶12. Moreover, not a single Class Member has requested to be excluded from the Settlement.  *Id.* at ¶11.[6]

## III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL

### A.   The Standards for Judicial Approval of Class Action Settlements

Public and judicial policy strongly favors pretrial settlement of litigation; this policy is particularly compelling in class actions and other complex litigation. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ("there exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex'"). Public policy recognizes that class actions alleging securities fraud are particularly well-suited for settlement. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("[d]ue to the notable unpredictability of result" and the length of such litigation, "securities fraud class actions readily lend themselves to settlement").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The criteria for granting final approval to a class action settlement, under Fed. R. Civ. P. 23(e), is that the settlement is "fair, adequate and reasonable and . . . not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotation marks and citation omitted); *accord Cotton*, 559 F.2d at 1330; *Knight v. Alabama*, 469 F. Supp. 2d 1016, 1031 (N.D. Ala. 2006), *aff'd sub nom.*, *United States v. Alabama*, 271 F. App'x 896 (11th Cir. 2008); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).

---

[6] If there are any objections or requests for exclusion, they will be addressed in the reply memorandum in further support of final approval and Lead Counsel's request for an award of fees and expenses that will be subsequently filed with the Court.

Approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *accord In re HealthSouth Corp. Sec. Litig*., 572 F.3d 854, 859 (11th Cir. 2009); *Bennett*, 737 F.2d at 986. Additionally, in evaluating a proposed settlement under these factors, the court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 2:04-cv-260-FTM-990NF, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009) (quoting *Cotton*, 559 F.2d at 1330). Indeed, in reviewing a class action settlement under Rule 23(e), "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *accord Strube*, 226 F.R.D. at 703. As explained herein, the Settlement meets these standards, and merits final approval.

**B.      The Settlement Meets the Eleventh Circuit Standard for Approval**

In determining whether to approve a settlement, the Court must decide whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1530 (11th Cir. 1994); *also see Bennett*, 737 F.2d at 986. The Eleventh Circuit has identified six factors to be considered in making this evaluation:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso,* 18 F.3d at 1530 n.6; *see also Bennett,* 737 F.2d at 986. As set forth below, a consideration of each of these factors readily establishes that the settlement is fair, adequate and reasonable and should be approved by the Court.

**1.      There Is No Fraud or Collusion Behind the Settlement**

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. "In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp*, 2009 WL 4042928, at *9 (citing *Bennett*, 737 F.2d at 987 n.9). Courts

"presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." William B. Rubenstein, Alba Conte and Herbert B. Newberg, 4 Newberg on Class Actions § 11:51 (4th ed. 2010).

Here, no claim of fraud or collusion in the negotiation of the Settlement could be credibly asserted. The Settlement was the product of extensive, arm's-length negotiations – including two hard fought, contentious mediation sessions before the Honorable Daniel H. Weinstein (Ret.), an experienced and well respected mediator.  During the mediations, the Parties discussed the merits of the Litigation, Defendants' defenses, and issues relating to damages. *See* Glancy Decl., Ex. 11.[7] Even after the Parties reached an agreement in principle as a result of the mediation, they continued to negotiate over the contents of the term sheet.  Not until the term sheet was completed did the Parties even begin to negotiate and prepare the comprehensive documentation necessitated by the Settlement.  Glancy Decl., ¶¶15-16.  This lengthy and protracted process was in no way collusive.  Moreover, the sheer amount of parties with distinct interests and competing motivations (as outlined above) made collusion an impossibility.

The settlement negotiation process here demonstrates beyond question that there is no issue of collusion. *See Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or collusion" where a "settlement [was] the product of . . . arm's-length, 'protracted and contentious' negotiation with a mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (parties' use of an "experienced and well-respected mediator" supported the court's finding that the settlement was fair and not the product of collusion); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (same).

### 2.        Highly Complex and Uncertain Litigation Will Be Averted by the Settlement

"[C]omplexity, expense and duration of the litigation" as a whole weigh heavily in favor of approving a settlement. *Bennett*, 737 F.2d at 986; *see also Woodward v. Nor-Am Chem Co.*, No. Civ. 94-0780-CB-C, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) (settlements "alleviate the need for judicial exploration of […] complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing."). "Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is

---

[7] The Declaration of the Honorable Daniel H. Weinstein (Ret.) in Support of Final Approval of Class Action Settlement (the "Weinstein Decl.").

common knowledge that class action suits have a well deserved reputation as being most complex." *Strube*, 226 F.R.D. at 698 (quoting *Cotton*, 559 F.2d at 1331). Securities class actions are notoriously difficult to prove and are vigorously defended. *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 529 (E.D. Pa. 1990) ("'[S]tockholder litigation is notably difficult and notoriously uncertain' even in the best of circumstances.").

Here, the claims and defenses are multifaceted and litigating them has already been complex and time-consuming. To date, Lead Plaintiffs' counsel have already spent more than 5,170 hours litigating this action.  Glancy Decl., ¶¶50, 61.  Moreover, recovery by any means other than settlement would still require additional years of litigation.  If the Settlement is not approved, Lead Plaintiffs would need to oppose motions to dismiss and move for class certification.  Additionally, the parties would have to continue and attempt to complete an extensive and time-consuming discovery process involving depositions of Imperial employees and various third parties and expert discovery. Expert discovery alone would involve the preparation of experts' reports in the fields of finance, forensic accounting, and insurance practices. Assuming that the Class's claims survived Defendants' inevitable summary judgment motions, trial preparation would result in additional efforts that would incur still additional expenses to the Class. The trial itself would require at least several weeks, "with its attendant pretrial order, laborious winnowing of proof before trial, and post-trial skirmishing." *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588, 591 (S.D.N.Y. 1992). It would involve numerous experts, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and financial resources.  Even after the trial of this case, the losing party would undoubtedly appeal the decision. Further appeals could last years, delaying resolution of the case. Even then, the Class is not guaranteed any compensation.

The Settlement, on the other hand, provides immediate benefits. As stated by the court in *In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'

*Id.* at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974)); s*ee also U.S. Oil & Gas,* 967 F.2d at 493 (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). Moreover, given that the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson,* 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (internal citation omitted), the appropriateness of the Settlement is all the more apparent.

In sum, were this action to be tried to conclusion instead of settled, it would be complex, time-consuming and expensive, with the chance of obtaining a recovery greater than that provided by the Settlement—or any recovery at all—far from assured. The Settlement secures for the Class a substantial benefit undiminished by further litigation expenses, and without the delay, risk and uncertainty of continued and protracted litigation.

### 3. The Factual Record Is Well Developed to Enable Class Representatives and Lead Counsel to Make a Reasoned Judgment About the Settlement

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 813 (3d Cir. 1995).  As outlined above, Lead Plaintiffs have a thorough understanding of the claims and defenses in this Litigation.  Lead Plaintiffs have conducted substantial discovery, both formal and informal, including the strategic review of more than two million pages of documents, interviewing Imperial's executives and former employees, and reviewed the myriad of pleadings in actions where Imperial had a financial interest in the insurance policy at issue.  Moreover, Lead Plaintiffs drafted an initial complaint and researched and prepared a comprehensive amended complaint that Lead Counsel were prepared to finalize and file with the Court if so required. Thus, before settling, Lead Plaintiffs developed ample information from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Mashburn,* 684 F. Supp. at 669.

### 4.    Lead Plaintiffs Face Obstacles to Obtaining the Relief They Seek

In assessing whether a proposed settlement is fair, reasonable and adequate, the Court must balance the immediacy and certainty of a recovery for the Class against the risks of continuing litigation. When evaluating securities class action settlements, courts have long recognized such litigation to be "notably difficult and notoriously uncertain." *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993); *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). Here, Lead Plaintiffs still faced many significant obstacles, including motions to dismiss, motions for class certification, and summary judgment.  Class Members faced a very real possibility of no recovery at all if the Court granted any of these motions in Defendants' favor.

First, proving that the misstatements caused a significant loss for investors and that the Class suffered damages as a result of Defendants' misconduct, also posed a significant challenge. Defendants likely would have argued that the drops in stock price were not, as Lead Plaintiffs allege, realizations of the risks concealed by Defendants' misrepresentations.  Indeed, disentangling the market's reaction to various pieces of news would have required complicated expert testimony and use of methodologies that are debated among economists.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).  For these reasons, vigorous challenges to loss causation and damages posed a significant risk to the Class at summary judgment, trial, and on appeal.  *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (plaintiffs' jury verdict in a Section 10(b) securities fraud reversed based on failure to prove loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment on the element of loss causation on the ground that class plaintiffs did not meet their burden of disentangling the fraud-related and non-fraud-related portions of the stock decline).

Second, the Class has been preliminarily certified for settlement purposes only. But for this Settlement, Defendants likely would strongly contest any motion for class certification and

would likely pursue any opportunity to de-certify the class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").   In any securities fraud class action, the plaintiff faces significant challenges to certifying a class and maintaining class action status throughout trial.  Pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), to obtain class certification, Lead Plaintiffs would need to prove that Imperial's shares traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into Imperial's share price.   Lead Plaintiffs would have to engage experts to demonstrate Imperial's securities' reaction to the release of material information.  Defendants likely would have contested that the market for Imperial stock was efficient, presented expert testimony of their own in support of their opposition to class certification, and potentially moved to strike the testimony of Lead Plaintiffs' expert.  While Lead Plaintiffs and Lead Counsel believe that certification of a non-settlement class would be appropriate in this case, and while conditional certification was granted by the Court in conjunction with preliminary approval of the Settlement, certification of the Litigation through trial was not guaranteed.[8]   Accordingly, the risks of certifying the action and maintaining the Class throughout the litigation support approval of the Settlement.

5. **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable When Compared with the Range of Possible Recovery**

The analysis of whether a settlement is fair in light of the potential range of recovery should be guided by the "important maxim" that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."

---

[8] Indeed, even if the Class were to be certified in continued litigation, Defendants would have the right to petition the Eleventh Circuit for an immediate interlocutory appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure.  There is no way to know if the Eleventh Circuit or even the Supreme Court would continue to maintain the Class.  Consequently, maintaining class certification is an expensive and risky enterprise. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and *en banc* in 2009); *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), *abrogated by Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) (class certification order reversed by the Fifth Circuit on the very point of law the Supreme Court later held invalid on appeal of the subsequent Fifth Circuit decision in *Halliburton*).

*Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*  This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metro. Life Ins. Co.,* 216 F.R.D. 55, 64 (S.D.N.Y. 2003). "[C]ompromise is the essence of settlement." *Bennett,* 737 F.2d at 986*; see also Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is . . . a yielding of absolutes and an abandoning of highest hopes.") (internal quotation omitted).

The Settlement value, totaling $15.5 million to $17.6 million in combined cash and warrants (*see* n.2, *supra*), constitutes 21.8% to 24.7% of Lead Plaintiffs' maximum estimated damages of $71 million, well within the range of fairness, and an objectively good recovery. Glancy Decl., ¶¶28, 44.  Indeed, settlements valued at a much lower percentage of possible damages are routinely approved.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *cf.*, Glancy Decl., Ex. 2 at p. 7 (Cornerstone Research study reviewing settlements reported for the years 1996-2010, found that where, as here, estimated damages were in the range of $50 to $124 million, the median settlement was 5.3% of damages – with that figure dropping to 2.6% in 2011).  The Settlement here is more than four times greater than the average from 1996-2010.  Thus, it is clearly an excellent result.

> **6.** **The Opinions of Lead Counsel, Lead Plaintiffs, and Class Members Favor Approval of the Settlement**

The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. City of Tampa,* 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Mashburn,* 684 F. Supp. at 672 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). Lead Plaintiffs' counsel have substantial experience litigating securities class

actions.  *See* Glancy Decl., Exs. 3, 5 at Ex. E, 7, 8 at Ex. 3. It is Lead Counsel's view, based on their knowledge of the law, their understanding of the Litigation, and the risks involved in further litigation, that the Settlement is a very favorable result for the Class.

Moreover, Lead Plaintiffs, who are sophisticated investors, closely supervised the Litigation, and have strongly endorsed the Settlement as fair, reasonable and adequate to the Class.

Finally, the reaction of class members to a proposed settlement is also a significant factor to be considered.  The absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *see Garst v. Franklin Life Ins. Co.*, No. 97-0074, 1999 U.S. Dist. LEXIS 22666, at *71-72 (N.D. Ala. 1999) ("small amount of opposition strongly supports approving the Settlement").

Pursuant to the Court's Order dated August 4, 2013, nearly 10,000 Notice Packets were sent to potential Settlement Class Members, and Summary Notices were published in *Investor's Business Daily* and the *Miami Herald*.  Glancy Decl., ¶¶ 5, 58 & Keough Decl., ¶¶7-8, & Exs. B thereto.  While the deadline – November 25, 2013 – for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement, the Plan of Allocation and the application for attorneys' fees and reimbursement of litigation expenses has yet to pass, to date, the reaction of the Class has been extremely favorable.  For example, as of the date of filing this motion, no objections have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement.  Glancy Decl. ¶¶5, 34, 59 and Keough Decl., ¶12.  In addition, as of the date of filing this motion, there have been no requests for exclusion from the Settlement.  Glancy Decl., ¶¶5, 59 and Keough Decl., ¶11.  *See also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement.").

## IV.     CERTIFICATION OF THE CLASS IS PROPER

In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that a class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority. Courts in this circuit adhere to a "policy of liberal construction of Rule 23 in the context of federal securities fraud actions." *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687,

693 (N.D. Ga. 2002). This Court conditionally certified the proposed Class in its August 4, 2013 Preliminary Approval Order (D.E. No. 89), and, as detailed below, the proposed Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

**A.     The Class Is Sufficiently Numerous**

The Class meets the numerosity requirement of Rule 23(a). First, the number and location of putative class members is such that it is impracticable to join all of the Class Members in one lawsuit. *See In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 685 (N.D. Ga. 1999) (plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class"). Throughout the Class Period, Imperial common stock was actively traded on the New York Stock Exchange ("NYSE"), and the Company sold more than 16.6 million shares of common stock in the IPO.  Nearly 10,000 copies of the Notice Packet have already been sent to potential Class Members.  Keough Decl., ¶7.  Thus, Lead Plaintiffs believe the putative class comprises hundreds of thousands of beneficial holders, which clearly satisfies the numerosity requirement. *See Theragenics*, 205 F.R.D. at 694 (numerosity is "generally presumed when a claim involves nationally traded securities").

**B.     The Commonality and Typicality Elements Are Satisfied**

The commonality requirement is met because substantial questions of law and fact are common to all Class Members (*e.g.*, whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Imperial in its Registration Statement and Prospectus). *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 491 (S.D. Fla. 2003) (finding commonality requirement to be met where, "like many other similar securities cases in this Circuit," the allegations involved a "unified scheme to defraud investors through misrepresentations and omissions of information and because several common questions of law exist."). Nothing in the analysis of the claims and defenses in this action suggests that there are substantial differences between the interests of the Class Members. Further, Class Members' claims all spring from the same common source - Defendants' alleged misrepresentations. Therefore, the commonality requirement is met.

Federal Rule of Civil Procedure 23(a)(3) further requires that the proposed representative's claims be "typical" of the claims of the class. The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also Theragenics*, 205 F.R.D. at 695

(finding typicality to be satisfied where each class member and proposed class representative alleged securities law violations and purchased stock at prices inflated by defendants' misrepresentations). Here, the Sauers' claims are "typical" of other Class Members' claims because they arise out of the same alleged conduct - the Defendants' alleged misrepresentations.

### C.    The Adequacy Requirement Is Satisfied

Lead Plaintiffs are adequate to serve as Class Representatives because their interests do not conflict with those of any member of the Class. A party's interests will only be deemed antagonistic to those of the rest of the class if the conflict is fundamental – going to the specific issues in controversy. 1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 to 141; §3.26 at 3-143 to 144 (3d ed. 1992).  Here, there can be no question that Lead Plaintiffs' interests are not adverse to those of the Class they represent, as their claims are identical to other Class Members, and they are not subject to any unique defenses.

Rule 23(a)(4)'s adequacy requirement is also met in this action because Lead Plaintiffs have fairly and adequately protected the interests of the Class. The adequacy requirements of Rule 23(a)(4) may be divided into two separate prongs: (i) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (ii) whether plaintiffs have interests antagonistic to those of the rest of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988).

Lead Plaintiffs' counsel have considerable experience, having successfully prosecuted many securities and complex class actions in courts throughout the United States. Lead Plaintiffs' counsel are highly accomplished and nationally known leaders in the field of complex securities class actions. *See* Firm Resumes of Lead Plaintiffs' counsel.[9] Further, as explained above, prior to entering the Stipulation of Settlement, Lead Plaintiffs' counsel undertook an extensive investigation, researched and prepared a comprehensive amended complaint that Lead Counsel were prepared to finalize and file with the Court if so required, drafted a comprehensive mediation statement, and conducted substantial discovery. By the time settlement discussions began, Lead Counsel were clearly informed of the strengths and weaknesses of the claims and

---

[9] The Firm Resumes of Glancy Binkow & Goldberg LLP, Robbins Geller Rudman & Dowd LLP, Grant & Eisenhofer P.A. and Saxena White P.A. are attached to the Glancy Decl. as Exs. 3, 5 at Ex. E, 7 & 8 at Ex. 3, respectively.

were able to use this knowledge to engage in a rigorous, lengthy negotiation process with Defendants.  Thus, the adequacy requirement is also met.

The Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this action

### D.   Predominance of Common Issues and Superiority of the Class Action Mechanism

Certification under Rule 23(b)(3) requires that common issues predominate over individual issues, and that the class action mechanism is superior to other methods of adjudicating the controversy.

As demonstrated above, this litigation involves both questions of law and fact that are common to the Class. For predominance, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Theragenics*, 205 F.R.D. at 697. However, "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989). There are no significant – let alone predominant – individual issues in this case. Indeed, it is difficult to discern any liability issues not common to all Class Members. Where, as here, Class Members are subject to the same alleged misrepresentations and omissions, and where, as here, it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate. If Lead Plaintiffs and each Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See In re BellSouth Corp.*, No. 1:02-CV-2142-WSD, 2006 WL 870362, at *4 (N.D. Ga. April 3, 2006) (finding the class action to be superior method for litigating a federal securities action because "prosecution by individual shareholders would be prohibitive from both the individual plaintiff's and the court's perspectives.").

A class action is also the superior method for resolving the claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities law.  *See Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 809 (1985) (noting that "most of the plaintiffs would have no realistic day in court if a class action were not available").[10]

Further, certification of the Class for settlement purposes is the superior method for resolving the claims of Lead Plaintiffs and the Class. Without the settlement class device, the Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of the class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.[11]

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

Approval of a plan for the allocation of Settlement proceeds in a class action is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (*citing Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)). When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). "A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008).

---

[10] The alternative to certifying the Class for settlement purposes would be to unleash hundreds, if not thousands, of individual actions into the judicial system, which could result in varying adjudications of liability, or risk that many class members would be unable to seek redress because they could not afford to proceed on an individual basis. The cost and expense of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive.

[11] Additionally, Rule 23(g)(1)(A) states that, "a court that certifies a class must appoint class counsel." Fed. R. Civ. Pr. 23(g)(1)(A). Lead Counsel satisfies the requirements of Rule 23(g) and should be appointed as class counsel. As discussed above, Lead Counsel have fairly and adequately represented the Class, and will continue to do so. Proposed Class Counsel are knowledgeable about the applicable law, are experienced in handling class actions, have performed substantial work in vigorously pursuing the Class' claims here, and have committed substantial resources to representing the Class. *See* Fed. R. Civ. P. 23(g)(1)(B).

Here, the Notice sent to Class Members and posted on the Settlement website describes the Plan of Allocation in detail. *See* Keough Decl., Ex. A at 10-11. The proposed Plan was formulated in close consultation with Lead Plaintiffs' expert, under the supervision of Lead Counsel. It is consistent with the expert's damages calculations, and takes into account the relative strengths and weaknesses of the claims asserted in this Litigation. It also prohibits Class Members from receiving a windfall by limiting recovery only to those Class Members who suffered actual losses. The Plan of Allocation provides a reasonable, rational basis for Class Members to recover their pro rata damages based upon the Company's stock price when purchased or sold, and the date on which that transaction occurred.

To date, no Class Members have objected to the Plan of Allocation. Keough Decl., ¶12. This fact supports approval. *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165(CM), 2007 WL 4115809, at *14 (S.D.N.Y. Nov. 7, 2007) (the fact that not a single class member objected to a plan of allocation supports its approval). The proposed Plan of Allocation is fair and reasonable and should be approved.

## VI.   NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs." The purpose of the notice is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). The Notice program utilized here, as set by the Preliminary Approval Order, easily meets this standard.

The Notice program was carried out by the Claims Administrator, Garden City Group ("GCG"), a nationally-recognized notice and claims administration firm, under the supervision of Lead Counsel. *See* Keough Decl. GCG provided individual notice *via* first-class mail to each member of the Settlement Class whose address was reasonably ascertainable.  In addition, GCG caused the Summary Notice to be published in *Investor's Business Daily* and the *Miami Herald*. Keough Decl., ¶¶5-7 & Ex. B.

The Notice amply describes the terms of the Settlement, the claims at issue, the releases, the process for objecting and opting out of the Settlement, how to make a claim, all pertinent

deadlines, and the time, date and place of the Final Approval hearing.   Keough Decl., Ex. A. Both a dedicated telephone hotline and a website were established to assist potential Class Members who had questions about the Settlement or the claims process. *Id.* at ¶¶9-10.   These efforts to inform Class Members of the Settlement, and their rights and obligations associated therewith, are more than sufficient to satisfy due process. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977) (holding that notice must contain "an adequate description of the proceedings written in objective, neutral terms, that . . . may be understood by the average absentee class member").

## VII.   CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter an Order and Final Judgment: (i) granting final approval of the Settlement and Plan of Allocation; (ii) finally certifying the Class for purposes of the Settlement; and (iii) finding that notice to the Class satisfied due process.

Dated:  November 15, 2013

**SAXENA WHITE P.A.**

*/s/ Joseph E. White, III*
Joseph E. White, III
Brandon T. Grzandziel
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

***Liaison Counsel for Lead Plaintiffs***

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:      (310) 201-9150
Facsimile:      (310) 201-9160

-and-

Robin Bronzaft Howald
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile:  (212) 382-3944

18

*Lead Counsel for Lead Plaintiffs*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone:     (215) 638-4847
Facsimile:     (215) 638-4867

*Additional Counsel for Lead Plaintiffs*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 15, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ Joseph E. White, III*
Joseph E. White, III
