**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MARTIN FULLER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) No.  11-81184-CIV-MARRA |
| Plaintiffs, | ) ) Hon. Kenneth A. Marra ) |
| v. | ) ) |
| IMPERIAL HOLDINGS, INC., et al., | ) ) |
| Defendants. | ) ) |

**LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF EXPENSES AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     SPECIFIC EFFORTS OF LEAD PLAINTIFFS' LEAD COUNSEL ..............................3

III.    ARGUMENT ........................................................................................................5

        A.      A Reasonable Percentage of the Fund Recovered Is the Appropriate Method to
                Use in Awarding Attorneys' Fees in the Eleventh Circuit .....................................5

        B.      The Percentage Fee Approved by Class Representatives Is Entitled to a
                Presumption of Reasonableness ............................................................................6

        C.      The Relevant Factors Confirm that the Requested Fee Is Fair and Reasonable......7

                1.      The Time and Labor Required ................................................................7
                2.      The Novelty and Difficulty of the Issues..................................................8
                3.      The Skill Required to Perform the Legal Services Properly and the
                        Experience, Reputation and Ability of the Attorneys ...............................9
                4.      The Preclusion of Other Employment .....................................................10
                5.      The Customary and Contingent Nature of the Fee....................................11
                6.      The Amount Involved and Results Achieved ...........................................12
                7.      The Undesireability of the Case .............................................................13
                8.      Awards in Similar Cases.......................................................................13
                9.      The Time Required to Reach Settlement...................................................14
                10.     No Objection to the Fee Request Has Been Filed to Date.........................14

        D.      Reimbursement of Litigation Expenses Should Be Awarded ...............................15

        E.      Lead Plaintiff Richard Sauer Should Be Reimbursed for His Respective Costs
                Directly Related to the Representation of the Class ............................................16

IV.     CONCLUSION ....................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534(S.D. Fla. 1998) ............................................................... 8, 9, 11, 12, 15

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ....................................................................................5

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ..........................................................5, 6, 7, 9

*David v. Am. Suzuki Motor Corp.*,
    No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ....................................9

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).........................................................................10

*Edmonds v. United States*,
    658 F. Supp. 1126 (D.S.C. 1987) ...................................................................9

*Eltman v. Grandma Lee's, Inc.*,
    No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986).......................................10

*Garst v. Franklin Life Ins. Co.*,
    No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) ..................6

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)........................................................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).......................................................................6, 10

*In re Charter Commc'ns, Inc. Sec. Litig.*,
    No. MDL 1506, 4:02-CV-1186 CAS,
    2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................................................17

*In re CV Therapeutics, Inc., Sec. Litig.*,
    No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007)....................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    Master File No. 02–CV–3400 (CM)(PED),
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..................................................................8

*In re Friedman's Inc. Sec. Litig.*,
　　No. 1:03-cv-3475-WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ................... 11, 12

*In re Gilat Satellite Networks, Ltd*,
　　No. 02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y Sept. 18, 2007) ..................... 17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
　　194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................. 8

*In re M.D.C. Holdings Sec. Litig.*,
　　No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ............................ 11

*In re Managed Care Litig.*,
　　Master File No. 00-1334-MD Moreno,
　　2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ............................................................ 6

*In re Marsh & McLennan, Cos., Inc. Sec. Litig.*,
　　04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................ 16

*In re MetLife Demutualization Litig.*,
　　689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................... 5

*In re Sterling Fin. Corp. Sec. Class Action*,
　　No. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ........................................ 8

*In re Sunbeam Sec. Litig.*,
　　176 F. Supp. 2d 1323 (S.D. Fla. 2001) .................................................................. 8, 10

*In re Terazosin Hydrochloride Antitrust Litig.*,
　　No. 99 MDL 1317, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) ................. 6

*In re The Mills Corp. Sec. Litig.*,
　　265 F.R.D. 246 (E.D. Va. 2009) ................................................................................. 6

*Ingram v. The Coca-Cola Co.*,
　　200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................ 8

*Johnson v. Ga. Highway Express, Inc.*,
　　488 F.2d 714 (5th Cir. 1974) ..................................................................................... 7

*Jones v. Diamond*,
　　636 F.2d 1364 (5th Cir. 1981) ................................................................................. 12

*Kirchoff v. Flynn*,
　　786 F.2d 320 (7th Cir. 1986) ................................................................................... 11

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 679 (M.D. Ala. 1988)...............................................................................8

*Merrill Lynch, Pierce, Fenner & Smith v. Dabit*,
    547 U.S. 71 (2006) ..........................................................................................................5

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ........................................................................................................5

*Norman v. Hous. Auth. of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988)...................................................................................11

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...............................................................8, 11, 15

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) ..........................................................................passim

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997)...................................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................................5

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999)..........................................................................6, 7, 13

**RULES AND STATUTES**

15 U.S.C. § 78u-4(a)(4)....................................................................................................16

Federal Rule of Civil Procedure 23(e) ................................................................................ i

**OTHER AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards*, § 2.19 (3d ed. 2006) ......................................................15

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs Richard Sauer, Francis Sauer, Stephen Sauer, and Tamara Sauer (the "Sauers" or "Lead Plaintiffs") respectfully move the Court for entry of the proposed Order and Final Judgment: (1) awarding Lead Plaintiffs' Lead Counsel attorneys' fees; (2) reimbursing Lead Plaintiffs' Lead Counsel's litigation expenses from the Settlement Fund; and (3) reimbursing Lead Plaintiff Richard Sauer's costs and expenses (including lost wages).

## MEMORANDUM OF LAW

## I.    PRELIMINARY STATEMENT

Through the efforts of Lead Plaintiffs and Lead Counsel spanning two years, Lead Plaintiffs achieved a settlement consisting of a cash payment of $12 million and two million warrants to be issued by Imperial (the "Settlement").[1]  The Settlement recovers approximately 21.8% to 24.7% of Lead Plaintiffs' maximum estimate of Class Period damages of $71,071,627, depending on the value of the warrants, and is an excellent result, particularly when viewed in light of the considerable risks posed by further litigation and the continued uncertainty of proving liability and damages.  *See* Glancy Decl.,[2] ¶¶28, 54; Final Approval Brief[3] at pp. 5-11.

Lead Counsel seek an award of 30% of the Settlement, and respectfully submit that the requested fee award is appropriate because the recovery obtained for the Class is largely attributable to their vigorous prosecution of the Litigation, and was only achieved after: a thorough investigation; the drafting of an initial complaint and the research and preparation of a comprehensive amended complaint that Lead Counsel were prepared to finalize and file with the Court if so required; substantial informal and formal discovery, including the strategic review of more than two million pages of documents and interviewing of high-ranking officers and directors of Imperial; the drafting of a substantial mediation statement; and two different arm's-

---

[1] The warrants have an exercise price of $10.75.  The warrants are valid for a period of five years from the date of issuance.  In Imperial's most recent Quarterly Report filed with the SEC on Form 10-Q, the Company valued these warrants on September 30, 2013, at a value of $5.6 million.  As of the date of filing, the warrants of Imperial stock contained in the Settlement were valued at $3.5 million by Lead Counsel's financial consultant using the Black-Scholes-Merton model.  Since there is no way to determine how much these warrants could be sold for at this time, as there is not a liquid marketplace for these warrants, for the sake of accuracy Lead Plaintiffs will treat the value of these warrants as being in the range of $3.5 million to $5.6 million.  Therefore, the Settlement value range is $15.5 million to $17.6 million.

[2] "Glancy Decl." refers to the Declaration of Lionel Z. Glancy in Support of Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation, and Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, filed concurrently herewith.

[3] "Final Approval Brief" refers to the Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation and Incorporated Memorandum of Law in Support Thereof, filed concurrently herewith.

length mediation sessions with a nationally-regarded mediator, with additional negotiations following the mediations. *See* Glancy Decl., ¶¶11-23, 26; Final Approval Brief at pp. 2-4.

The reaction of the Class also strongly supports the requested fee. Pursuant to the Court's Order dated August 4, 2013 (the "Preliminary Approval Order"), as of November 11, 2013, the Claims Administrator had mailed nearly 10,000 packets to potential Settlement Class Members, *see* Glancy Decl., ¶¶5, 34, 58 and Ex. 1 thereto (Declaration of Jennifer Keough, "Keough Decl."[4]) at ¶7, enclosing the Joint Notice of Proposed Securities Action and Derivative Action Settlements, Application of Attorneys' Fees and Expenses, and Settlement Fairness Hearings (the "Notice"), and the Proof of Claim and Release form (the "Claim Form") (collectively the "Notice Packet"). The Notice specifically advised Settlement Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees representing up to 33.33% of the Settlement Fund, and that Lead Counsel would seek expenses not to exceed $250,000.00. Keough Decl., Ex. A at p. 2.

The deadline to request to be excluded from the Settlement or to file objection to the Settlement is November 25, 2013. To date, there have been no objections filed with respect to any aspect of the Settlement, including the request for fees and expenses. Glancy Decl., ¶¶5, 59; Keough Decl., ¶12. Additionally, to date, not a single request for exclusion has been received by the Claims Administrator. Glancy Decl., ¶¶5, 59; Keough Decl., ¶11.

The fairness and reasonableness of Lead Counsel's fee and expense request are confirmed when cross-checked with Lead Counsel's cumulative lodestar.[5] Lead Counsel have spent 5,172.85 hours of professional time, having a market value of approximately

---

[4] The Keough Declaration was also previously filed with the Court on November 13, 2013. Docket Entry ("D.E.") No. 90.

[5] Lead Counsel's lodestar is comprised of the total hours worked by the Court appointed Lead Counsel (Glancy Binkow & Goldberg LLP), Lead Plaintiffs' additional counsel and the Court appointed Liaison Counsel, Saxana White P.A. For purposes of this memorandum only, these four law firms are collectively referred to as "Lead Counsel."

Lead Plaintiffs' additional counsel is comprised of Robbins Geller Rudman & Dowd LLP and Grant & Eisenhofer P.A., the counsel for the plaintiffs in the two related securities actions that were originally filed in state court and removed to this Court by Defendants. During the course of this Litigation and at the time of Settlement, these two actions had remand motions pending. As part of the Settlement, these motions will be withdrawn in the event that the Settlement becomes final.

$2,407,378.75, in prosecuting the Litigation.  Glancy Decl., ¶¶50, 61.  The requested fee, which incorporates a lodestar multiplier of 1.93 or 2.19 depending on the valuation of the warrants,[6] compensates Lead Counsel for this time and labor, as well as the substantial risks associated with litigating this case on a fully contingent basis.

For the reasons set forth more fully below, Lead Plaintiffs respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the undertaken contingency risk, and thus should be awarded by the Court.

## II.     SPECIFIC EFFORTS OF LEAD PLAINTIFFS' LEAD COUNSEL

The gravamen of the Litigation required Lead Plaintiffs to prove that the Registration Statement and Prospectus issued in connection with Imperial Holdings' February 7, 2011, Initial Public Offering were false and misleading in failing to disclose that the Company was engaging in improper premium finance transactions.   To successfully prosecute the Litigation, it was necessary for Lead Counsel to familiarize themselves with the premium finance industry, complex accounting and finance principles and investigate Imperial's conduct that resulted in a government raid on its offices and a payment of an $8 million penalty to resolve an investigation by the United States Department of Justice.

To prove Lead Plaintiffs' claims, not only did they need to prove liability, Lead Plaintiffs would be required to prove that the revelation of the truth about Defendants' alleged misrepresentations to the investing public resulted in a decline in the price of Imperial common stock.   To prove such, Lead Plaintiffs would have to engage accounting experts as well as experts to opine on the issues of loss causation and damages.   As explained in detail in the Glancy Declaration (at ¶¶8-23, 26, 39, 48), the work performed by Lead Counsel includes:

- Reviewing and analyzing Imperial's Class Period and pre-Class Period public filings, annual reports, press releases, conference call transcripts and other public statements;

---

[6] Lead Counsel are seeking a fee of $3,600,000 (30% of the $12 million cash component of the Settlement), plus interest, and 30% of the warrants which had a current value of $1,050,000 or $1,680,000 (30% of $3.5 or $5.6 million, *see* n.1, *supra*) respectively, for a total of $4,650,000 or $5,280,000, depending on the valuation of the warrants. Thus, the fee requested by Lead Counsel represents a 1.93 or 2.19 multiplier, depending on what valuation is applied to the warrants.

- Collecting and reviewing a comprehensive compilation of analyst reports and major financial news service reports on Imperial;

- Reviewing and analyzing stock trading data relating to Imperial;

- Locating and interviewing witnesses, including former employees of Imperial;

- Reviewing Lead Plaintiffs' qualifications to serve as a class representative;

- Researching and analyzing publicly-available journals, industry publications, and other materials, both specifically related to Imperial and more generally related to the premium finance industry;

- Retaining accounting, damages and financial experts and having experts review financial documentation regarding Imperial provided by the Company;

- Drafting the initial complaint;

- Researching and preparing a comprehensive amended complaint that would comply with heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA");

- Drafting a substantial mediation statement that outlined the strengths of Lead Plaintiffs' claims against Defendants and contained a thorough damages analysis;

- Attending a meeting with defense counsel in Washington, D.C.;

- Attending two mediations with representatives of the related derivative and securities actions as well as Defendants' insurance carriers;

- Reviewing a myriad of actions seeking to invalidate insurances policies in which Imperial had a financial interest;

- Conducting substantial discovery, including the strategic review of more than two million documents provided by Defendants, and documents produced as the result of the issuance of Florida Office of Insurance Regulation requests;

- Interviewing key Imperial employees, including one of the Company's Board Members and a high-ranking financial officer;

- Obtaining a settlement consisting of $12,000,000 in cash and two million Imperial warrants following arm's-length negotiations with defense counsel with the assistance of a well-respected mediator;

- Preparing the documents required for preliminary and final approval of the settlement; and

- Overseeing the claims and notice process.

Lead Counsel's efforts to successfully resolve this Litigation have been to date without compensation of any kind, and payment of attorneys' fees was and always has been wholly contingent upon the result achieved. As compensation for these efforts, Lead Counsel respectfully requests this Court to award attorneys' fees of 30% of the Settlement Fund, plus $203,282.80 in unreimbursed expenses. Supported by ample case law both in this Circuit and across the country, Lead Counsel's 30% fee request is appropriate compensation for the excellent result Lead Counsel have obtained for the Class.

## III.   ARGUMENT

### A.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method to Use in Awarding Attorneys' Fees in the Eleventh Circuit

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that where a class plaintiff successfully recovers a settlement fund, the costs of litigation should be spread among the fund's beneficiaries. Thus, attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund as compensation for their work. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and therefore discourage future misconduct of a similar nature." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010). Indeed, the Supreme Court has emphasized that private securities cases such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Id.* at 320 n.4 (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 81 (2006)).

In *Camden,* the Eleventh Circuit announced the rule that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (same). A percentage-based fee award accomplishes several objectives:

> First, it is consistent with the private market place where contingent fee attorneys are regularly compensated on a percentage of recovery method. Second, it provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances. Finally, the percentage approach reduces the burden of the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members.

*Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *83-84 (N.D. Ala. June 25, 1999) (citations omitted). Each of these objectives applies here.

A review of fee awards in common fund securities class actions within this Circuit confirms that the requested 30% fee is within, and even below, the range of typical fees awarded. *See, e.g., In re Managed Care Litig. (Cigna)*, No. 00-1334-MDL-MORENO (S.D. Fla. Feb. 2, 2004) (awarding 35.5%); *In re Managed Care Litig. (Aetna),* Master File No. 00-1334-MD Moreno, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (awarding 35.5%); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99 MDL 1317, 2005 U.S. Dist. LEXIS 43082, at *19-22 (S.D. Fla. Apr. 19, 2005) (awarding 33.3%).

## B.    The Percentage Fee Approved by Class Representatives Is Entitled to a Presumption of Reasonableness

In enacting the PSLRA, Congress intended to encourage sophisticated investors with substantial financial stakes in the litigation to serve as lead plaintiffs and play an active role in supervising and directing the litigation, including selecting and monitoring class counsel. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 261-62, 282 (3d Cir. 2001). Accordingly, fees negotiated between a properly selected PSLRA lead plaintiff and their counsel should be accorded a presumption of reasonableness. *See Id.* at 282-83; *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009) ("in a PSLRA case . . . a fee request that has been approved and endorsed by properly-appointed lead plaintiffs . . . enjoys a presumption of reasonableness"). Such a presumption helps "ensure that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers." *Cendant*, 264 F.3d at 282.

Here, Lead Plaintiffs are sophisticated investors. Lead Plaintiffs approve and endorse the requested fee as fair and reasonable in light of, among other things, the substantial work Lead Counsel has done in the Litigation, the risks of continuing the Litigation through trial and the excellent result obtained on behalf of the Class. *See, e.g.*, Glancy Decl., Ex. 10 (Declaration of Richard Sauer). Accordingly, the requested fee is entitled to a presumption of reasonableness.

### C. The Relevant Factors Confirm that the Requested Fee Is Fair and Reasonable

The Eleventh Circuit has enumerated several factors for district courts to consider in determining what constitutes a reasonable attorneys' fee award. *Camden I*, 946 F.2d at 774. These factors include: (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n.3 (*citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Here, an analysis of the most relevant factors confirms that the fee requested by Class Counsel is fair and reasonable.

#### 1. The Time and Labor Required

A review of the efforts and time dedicated by Lead Counsel establishes that the requested fee is justified. The prosecution of this action has been highly focused and time-intensive, lasting almost two years. Lead Counsel have expended 5,172.85 hours prosecuting this litigation. As outlined in Section II above, Lead Counsel have performed substantial and necessary amounts of work to reach the successful settlement of this Litigation.

While it is not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 30% award. *See, e.g., Waters*, 190 F.3d at 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Based on their combined hours and current rates, counsel's combined lodestar is $2,407,378.75. This lodestar represents a multiplier of 1.93 or 2.19 depending on the valuation of the warrants. *See* n.6, *supra*.

This multiplier is reasonable and in, and even below, the range of multipliers frequently awarded in class action settlements of similar magnitude in this and other circuits. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "in large and complicated class actions" tend to range from 2.26 to 4.5, and that while "three appears to be the average" many cases have awarded higher multipliers) (citing *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 549 (S.D. Fla. 1998), *aff'd,* 899 F.2d 21 (11th Cir. 1990)); *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable.").

Additionally, the legal work will not end with the Court's approval of the Settlement. Lead Counsel will necessarily expend additional hours and resources overseeing the Claims Administrator and responding to Class Members' inquiries. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, Master File No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *25 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel is also overseeing all aspects of the settlement process, a responsibility that will continue into the coming months."); *Mashburn*, 684 F. Supp. at 699 (Time expended in settlement administration may be considered in determining attorneys' fees in a class action of this nature). The time and effort devoted to this case by counsel the Settlement confirms that the 30% fee request is reasonable.

### 2.    The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001); *see Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Moreover, "securities actions have become more difficult from a plaintiff s perspective in the wake of the PLSRA." *In re Sterling Fin. Corp. Sec. Class Action*, No. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (citation omitted); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that "securities actions have become

more difficult from a plaintiffs' perspective in the wake of the PSLRA"). This action was no exception.[7]

Notably, the Litigation settled for between 21.8% to 24.7% of the Class Period damages *before* Lead Plaintiffs had proved that Imperial stock traded in an efficient market (a prerequisite for class certification) and *before* Lead Plaintiffs demonstrated (either on summary judgment or at trial) the amount of Imperial's share price decline attributable to the revelation of the truth about Defendants' alleged misrepresentations to the investing public about their premium financing business resulted in a decline in the price of Imperial common stock. In sum, the obstacles to recovery faced by the Class in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and applicable proof requirements during the later stages of the case (and on appeal).

### 3. The Skill Required to Perform the Legal Services Properly and the Experience, Reputation and Ability of the Attorneys

Under the *Camden I* factors, the court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3. As the court in *Edmonds v. United States* recognized, the "prosecution and management of a complex national class action requires unique legal skills and abilities." 658 F. Supp. 1126, 1137 (D.S.C. 1987).

The quality of Lead Counsel's work on this case is reflected in the significant recovery obtained. *See Behrens*, 118 F.R.D. at 547-48. Here, Lead Counsel were able to secure a Settlement of approximately 21.8% to 24.7% of the *maximum* estimated recoverable damages. This fact alone demonstrates Lead Counsel's skill in litigating this matter since the average recovery in similar matter is significantly less. Glancy Decl., Ex. 2 at p. 7 (Cornerstone Research study reviewing settlements reported for the years 1996-2010, found that where, as here, estimated damages were in the range of $50 to $124 million, the median settlement was

---

[7] The risks of further litigation are analyzed in connection with approval of the Settlement itself and will not be discussed at length herein. The Court is also respectfully referred to paragraphs ¶¶52-57 of the Glancy Declaration.

5.3% of damages – with that figure dropping to 2.6% in 2011); *see also In re Cendant*, 264 F.3d at 241 (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses).

The standing and prior experience of Lead Counsel are also relevant in determining fair compensation. *See, e.g., Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). Lead Counsel's firms' supporting declarations include firm resumes for each firm and a description of their background and experience in conducting securities litigation. Glancy Decl., Exs. 3, 6 at Ex. E, 7 & 8 at Ex. 3. As those submissions demonstrate, Lead Counsel have extensive and significant experience in the highly-specialized field of securities class action litigation. Given the complexity of the issues presented in this Litigation, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. Glancy Decl., ¶¶52-57, and Ex. 11 (Weinstein Decl.) at ¶¶14-16. It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

This court should also consider the "quality of the opposition the plaintiffs' attorneys faced" in awarding Lead Counsel a fee. *See Sunbeam*, 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. The Defendants have been represented by very able and prestigious law firms with vast resources at their disposal, including Kenny Nachwalter, P.A., Proskauer Rose LLP, Williams & Connolly LLP, and Latham & Watkins LLP. Hence, the ability of Lead Counsel to obtain such a favorable Settlement for the Class in light of such formidable legal opposition confirms the quality of the representation.

In sum, Lead Counsel were required to perform with a high level of skill, efficiency, and professionalism to assemble a case that was strong enough to encourage the Company to compensate Settlement Class Members for their losses. Lead Counsel evaluated the merits and risks presented, negotiated a very favorable payment, and settled the Litigation on excellent terms for the Class. Accordingly, this factor also supports the fee requested.

### 4.    The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case against the Defendants – 5,172.85 hours – was time that Lead Counsel could have devoted to other matters. Lead Counsel

dedicated themselves to the prosecution of the Litigation despite the risk of no recovery and were able to achieve a substantial recovery while deferring payment of their fees and expenses until a settlement was put in place. Accordingly, this factor also supports the requested fee.

### 5.    The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis.[8] *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The contingent nature of Lead Counsel's fees should be given substantial weight in assessing the requested fee award. Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining the award of attorneys' fees:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee ... and the fact that the risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also Ressler*, 149 F.R.D. at 654-55; *Behrens*, 118 F.R.D at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."). "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *In re Friedman's Inc. Sec. Litig.*, No. 1:03-cv-3475-WSD, 2009 WL 1456698, at \*3

---

[8] If this were not a class action, the customary fee arrangement would be contingent on a percentage basis, and in the range of 30% to 40% of the recovery. *E.g., Blum v. Stenson*, 465 U.S. 886, 903 n.\* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at \*7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case had gone to trial).  Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is comparable and even greater than the percentage-of-recovery fee requested in this case, Lead Counsel's request is reasonable and at the low end of that range.

Additionally, when determining the market rate by looking at fees awarded in similar cases, the rates billed by Lead Counsel (ranging from \$300-\$570 per hour for non-partners and \$550-\$875 per hour for partners), are comparable to peer plaintiff and defense firms litigating matters of similar magnitude, including Defendants' counsel herein.  *See* Glancy Decl., Ex. 9 (chart of law firm billing rates).

(N.D. Ga. May 22, 2009) citing *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981). This is so because of the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever. *See Ressler*, 149 F.R.D. at 656-57.

> As the court in *Behrens* noted:
>
>> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged. If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions – must be promoted.

118 F.R.D at 548 (citations omitted).

Success in contingent litigation such as this is never guaranteed. In other cases, plaintiffs' counsel in shareholder litigation have suffered major defeats after years of litigation in which they expended millions of dollars of time and received no compensation at all. Even a victory at the trial stage is not a guarantee of success. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict for $81.3 million in securities class action). As noted above, Lead Plaintiffs' claims against Defendants faced a number of hurdles that could have resulted in no recovery or substantially limited the recovery during motion practice, a long trial or appellate process. Indeed, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. Thus the substantial risks of the Litigation justify the requested fee.

### 6. The Amount Involved and Results Achieved

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also In re Friedman's*, 2009 WL 1456698, at *3 (same). As noted above, this excellent result was accomplished despite the substantial difficulties of establishing liability and damages for securities fraud claims, and the risks that would be involved in defeating motions to dismiss, certifying the class, overcoming summary judgment and successfully trying this action in front of a jury.  It was only through the dedicated efforts of Lead Counsel in completing a comprehensive investigation, conducting substantial document review, drafting a convincing mediation statement, representing the

interests of the Class at two mediations and contentiously negotiating the terms of the Settlement that allowed the Class to achieve this substantial Settlement.

In addition, this Settlement is far superior to the average range of settlements achieved in securities class actions. Lead Counsel's damages expert estimated Classwide damages at approximately $71 million. A settlement in the range of $15.5 million to $17.6 million represents a recovery of 21.8% to 24.7% of potential damages. As discussed above, the Settlement here far surpasses the average return in similar class actions.  Glancy Decl., Ex. 2 at p. 7 (Cornerstone Research study reviewing settlements reported for the years 1996-2010, found that where, as here, estimated damages were in the range of $50 to $124 million, the median settlement was 5.3% of damages – with that figure dropping to 2.6% in 2011).

### 7.      The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. There are risks inherent in financing and prosecuting complex litigation of this type. When Lead Counsel undertook representation of Lead Plaintiffs in this Litigation, it was with the knowledge that they would have to spend substantial time and money, and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and the expense involved in light of the possibility of a recovery at an uncertain date, or of no recovery at all. Apart from the risk of no recovery, the deferral of fees in such an undertaking, while at the same time advancing millions of dollars in expenses, would deter most firms. Moreover, only two plaintiffs' firms sought appointment as Lead Counsel, an extremely small number for this type of litigation. Thus, the "undesirability" of the case also weighs in favor of the requested fee.

### 8.      Awards in Similar Cases

Another factor to be considered in arriving at a percentage fee award is the amount of awards in similar cases.  As discussed above, Lead Counsel's requested fee of 30% of the Settlement Fund is on par with, and even below, other class action cases in this Circuit. Moreover, in comparable class action settlements, judges in this Circuit have awarded more than the 30% fee requested here.  In fact, courts routinely grant fee awards of 33.33% in this Circuit. *See, e.g., Waters*, 190 F.3d at 1292-98 (affirming district court's award of 33.33% attorneys' fee on $40 million common fund); *In re HealthTronics Surgical Servs., Inc. Sec. Litig.*, No. 03-CV-2800-CC (N.D. Ga. Dec. 1, 2005) (33% fee); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*,

No. 00-CV-1416-CC (N.D. Ga. May 26, 2005) (33.33% fee); *In re Clarus Corp. Sec. Litig.*, No. 00-cv-2841-CAP (N.D. Ga. Jan. 6, 2005) (33.33% fee); *In re Theragenics Corp. Sec. Litig.*, No. 99-cv-0141-TWT (N.D. Ga. Sept. 29, 2004) (awarding 33.33% of $10 million settlement fund plus interest and expenses); *In re The Maxim Group, Inc. Sec. Litig.*, No. 99-cv-1280-CAP (N.D. Ga. July 20, 2004) (awarding 33⅓% of $3 million settlement fund plus expenses); *Cheney v. Cyberguard Corp.*, No. 98-6879-CIV-Gold/Simonton (S.D. Fla. May 7, 2004) (33.33% fee); *In re Medirisk, Inc. Sec. Litig.*, No. 98-cv-1922-CAP (N.D. Ga. Mar. 22, 2004) (awarding 33.33% of $4 million settlement fund plus interest and expenses); *In re Pediatric Servs. of Am., Inc. Sec. Litig.*, No. 1:99-cv-0670-RLV (N.D. Ga. Mar. 15. 2002) (awarding 33.33% of $3.2 million settlement fund plus interest and expenses); *In re Harbinger Corp. Sec. Litig.*, No. 1:99-cv-2353-MHS (N.D. Ga. Oct. 18, 2001) (awarding 33.33% of settlement fund plus interest and expenses); *Bakalor v. Integrated Communication Network, Inc*, No 96-2021-Civ-King (S.D. Fla. Dec. 15, 1997) (awarding 33.33% fee); *Silver v. Sensormatic Electronics*, 93-8619-Civ-Marcus (S.D. Fla. July 16, 1996) (awarding 33.33% fee); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.,* No. 1:00-cv- 1416-CC (N.D. Ga. May 26, 2005) (awarding 33.33% of $6.75 million settlement fund plus interest and expenses).   This factor strongly supports the reasonableness of the fees requested.

### 9.      The Time Required to Reach Settlement

A substantial amount of time was required to bring this case to a successful resolution. During this time, Lead Counsel dedicated 5,172.85 hours to the case and incurred $203,282.80 in litigation related expenses on a wholly-contingent basis. *See* Glancy Decl., ¶¶45, 50, 61, 64 & Exs. 5, 6 at Ex. B, 7 at ¶22 & 8 at Ex. 2.  In consideration of the significant amount of time expended on the prosecution of the claims and the negotiation of the Settlement, the requested fee should be awarded in full.

### 10.     No Objection to the Fee Request Has Been Filed to Date

In further confirmation of the reasonableness of the requested fee, no member of the Class has, to date, filed an objection. A copy of the Notice was mailed to each Class Member or his or her nominees, and Summary Notice was published in *Investor's Business Daily* and the *Miami Herald*.  Keough Decl., ¶¶5-8 & Ex. B. The Notice stated that Lead Counsel would apply for fees not to exceed 33.33% of the Settlement Fund, and that the deadline for filing objections to the fee application is November 25, 2013.  As of the date of this Memorandum, not a single

objection to the requested fee award has been filed. The lack of any objection is itself important evidence that the requested fee is fair. *See Pinto*, 513 F. Supp. 2d at 1343 ("That this sizeable class did not give rise to a single objection on the fees request further justifies the full award."); *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request). This is especially true, whereas here, Lead Counsel are requesting a fee that is less than was contained in the Notice.

As the foregoing demonstrates, under Eleventh Circuit law, Lead Counsel should receive a reasonable percentage of the recovery received by the Class. An examination of other fee awards demonstrates that the fee requested by Lead Counsel is reasonable compared to fee awards in the Eleventh Circuit. Finally, the requested fee is reasonable in light of all the factors the Eleventh Circuit has recommended for consideration in evaluating a fee, including the time and effort expended by counsel, the difficulty of the issues presented, the result obtained, and the contingent risk of the litigation.

### D. Reimbursement of Litigation Expenses Should Be Awarded

Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also Behrens*, 118 F.R.D. at 549; 1 Alba Conte, *Attorney Fee Awards*, § 2.19, at 73-74 (3d ed. 2006) ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them as low as reasonably possible – and did so. Indeed, total expenses of $203,282.80 are significantly less than the $250,000.00 estimate contained in the Notice. *See* Keough Decl., Ex. A. Moreover, the fact that no Settlement Class Members objected to the reimbursement of Lead Counsel's estimated expenses further evidences their reasonableness.

The expenses included compensation for experts in the areas of accounting, damages and financial analysis in the amount of $46,666.92. The expertise and assistance provided by these experts was critical to the prosecution and successful resolution of the Litigation. Additionally, $54,917.69 in expenses was compensation to the mediator. In addition, Lead Counsel were required to travel to attend interviews of Imperial's executives and officer, and mediations, and, incurred the related costs of travel tickets, meals, and lodging. The other expenses for which reimbursement is sought are the types of expenses that are necessarily incurred in litigation and

routinely charged to clients billed by the hour. These expenses include, among others, legal research, long distance telephone and facsimile charges, postage and delivery expenses, filing fees and photocopying.

Because the litigation expenses incurred by Lead Counsel are of the type for which reimbursement is routinely ordered in class actions and other common fund cases and were essential to the successful prosecution and resolution of the Litigation with respect to the Defendants, reimbursement of the expenses should be granted.

E.     **Lead Plaintiff Richard Sauer Should Be Reimbursed for His Respective Costs Directly Related to the Representation of the Class**

Lead Counsel respectfully submits that the Court should reimburse Richard Sauer (on behalf of himself and his wife) his respective costs and expenses directly related to the representation of the Class. The PSLRA allows for reimbursement of the "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also In re HealthSouth Corp. Stockholder Litig*., Slip Op. No. CV-03-BE-1501-S (N.D. Ala. July 26, 2010) (awarding a total of $42,302.73 in expenses to several Lead Plaintiffs). In accordance with the PSLRA, and the inherent powers of the court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives.

Lead Plaintiff Richard Sauer is a sophisticated investor who was substantially involved in all aspects of the prosecution of the action, including the Settlement of the Litigation, and conferred with Lead Counsel throughout the litigation. Glancy Decl., ¶¶66-68.  In support of his application, Lead Counsel has detailed Richard Sauer's respective involvement in the Litigation. *Id*. Richard Sauer spent approximately 100 hours prosecuting this action, representing $10,000.00 in expenses.  Glancy Decl., Ex. 10 (Declaration of Richard Sauer).  Without the Sauers' willingness to undertake the responsibilities and risk attendant with bringing a representative action, the successful resolution of this dispute could not have occurred.

Accordingly, in light of the important public policy advanced by private securities litigation, Richard Sauer should be reimbursed for lost time and expenses spent supervising and participating in the litigation on behalf of the Class. *See In re Marsh & McLennan, Cos., Inc. Sec. Litig*., No. 04 Civ. 8144(CM), 2009 WL 5178546, at *22 (S.D.N.Y. Dec. 23, 2009).  Here, Mr. Sauer is only seeking to be compensated at a rate of $100 per hour. Courts that have

approved reimbursement requests including lost wages for lead plaintiffs, such as Mr. Sauer, typically use substantially greater hourly rates. *See In re Gilat Satellite Networks, Ltd*, No. 02-1510 (CPS)(SMG), 2007 WL 2743675, at *18-19 (E.D.N.Y Sept. 18, 2007) (awarding lead plaintiffs, individuals working for mutual funds, $10,000 at a rate of $300/hr); *In re Charter Commc'ns, Inc. Sec. Litig*., No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *24-25 (E.D. Mo. June 30, 2005) (awarding lead plaintiff, an investment manager, $26,625 at a rate of $300/hr based on his annualized compensation; *In re CV Therapeutics, Inc., Sec. Litig*., No. C 03-3709 SI, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (awarding lead plaintiff, a financial analyst, $26,000 at a rate of $250/hr).

Accordingly, Lead Counsel submit that the $10,000 sought by Richard Sauer, based on his active involvement in the Litigation at a fair hourly rate, is eminently reasonable and should be granted.

## IV. CONCLUSION

Securities class actions are complex and laden with risk.  Lead Counsel accepted this risk, expending thousands of hours vigorously litigating this Litigation despite the very real possibility that if they did not achieve a favorable result for the Class they would receive no compensation. As demonstrated herein and in the papers submitted herewith, the Litigation has been hard-fought at every turn.   From the beginning, Lead Plaintiffs faced determined adversaries represented by experienced and equally-determined defense counsel.  Without any assurance of victory, Lead Plaintiffs and their Counsel pursued this Litigation to a successful conclusion.

In light of all of the foregoing considerations, the Settlement represents an excellent recovery on behalf of the Settlement Class and reflects the skill and dedication of Lead Counsel. It is respectfully requested that the Court approve the fee and expense application and enter the Order submitted herewith awarding Lead Counsel attorneys' fees in the amount of $3,600,000.00 and 30% of the two million warrants of the Settlement Fund plus reimbursement of $203,282.80 for expenses; reimbursement to Lead Plaintiff Richard Sauer in the amount of $10,000.00; and interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid in full.

Dated:  November 15, 2013

SAXENA WHITE P.A.

*/s/ Joseph E. White, III*
Joseph E. White III
Brandon T. Grzandziel
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

*Liaison Counsel for Lead Plaintiffs*

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:       (310) 201-9150
Facsimile:       (310) 201-9160

-and-

Robin Bronzaft Howald
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile:  (212) 382-3944

*Lead Counsel for Lead Plaintiffs*

LAW OFFICES OF HOWARD G. SMITH
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone:       (215) 638-4847
Facsimile:       (215) 638-4867

*Additional Counsel for Lead Plaintiffs*

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 15, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

<u>*/s/ Joseph E. White, III*</u>
Joseph E. White, III
